UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BEATRIZ CISNEROS PANTOJA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAMCO ENTERPRISES, L.P., <br><br> Defendant. | Case No. 19-CV-03336-LHK <br><br> **ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES** <br><br> Re: Dkt. No. 16 |

On June 12, 2019, Defendant RAMCO Enterprises ("Defendant") removed this action from the Superior Court of California for the County of Monterey. ECF No. 1. Before the Court is Plaintiff Carmela Maribel Arroyo's ("Plaintiff")[1] motion to remand and request for attorney's fees. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion to remand and DENIES Plaintiff's request for attorneys' fees.

**I.  BACKGROUND**

---

[1] According to Plaintiff, the previous class representative, Beatriz Cisneros Pantoja, settled her claims with Defendant individually. ECF No. 16 at 9 n.2. Plaintiff's counsel then located Carmela Maribel Arroyo to serve as class representative and Plaintiff. *Id.*

1

In connection with the pending motion and request, both sides request that the Court take judicial notice of various documents filed in the Superior Court of California for the County of Monterey. ECF Nos. 16-4 and 17-2. Neither party opposes taking judicial notice. "These court filings and orders are judicially noticeable because they have a direct relation to the matters at issue." *Hypower, Inc. v. Sunlink Corp.*, 2014 WL 1618379, at *1 n.1 (N.D. Cal. Apr. 21, 2014) (citing Fed. R. Evid. 201 and *United States v. Black,* 482 F.3d 1035, 1041 (9th Cir. 2007)). Additionally, courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (internal citations omitted). The Court agrees that these documents are subject to judicial notice and therefore GRANTS the requests for judicial notice of these documents pursuant to Rule 201(b) of the Federal Rules of Evidence. *See id.* However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The Court recounts the facts from the state court proceedings only as necessary for the resolution of the instant motion and request.

On February 25, 2014, Plaintiff sued Defendant, a California limited partnership, in the Superior Court of California for the County of Monterey. ECF No. 16-4, Ex. 2 ¶ 5. Plaintiff brought suit on behalf of a putative class of all current and former employees of Defendant "who were non-exempt under the Wage Order and who performed any work for Defendants in California during the Class Period and were paid any portion of their wages on a piece rate basis." *Id.* ¶ 36. Plaintiff generally alleged that Defendant unlawfully underpaid putative class members for hours worked, minimum wages, overtime wages, rest periods, and other reimbursement costs for work-related expenses. *Id.* ¶¶ 12-35. Plaintiff alleged various violations of the California Labor Code and the California Business and Professions Code. *Id.* at 1-2. Plaintiff amended the class action complaint on June 9, 2014 and again on August 31, 2016. ECF No. 16-4, Exs. 3-4.

2

Case No. 19-CV-03336-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

1   The Second Amended Complaint filed on August 31, 2016 replaced class representative Beatriz

2   Pantoja with current Plaintiff Carmela Maribel Arroyo.

3   On July 29, 2015, Plaintiff served a settlement conference statement on Defendant. ECF

4   No. 16-4, Ex. 5. In the settlement conference statement, Plaintiff demanded $11.5 million to

5   resolve all claims at issue, inclusive of costs and attorneys' fees. *Id.* at 4.

6   On May 7, 2019, Plaintiff filed and served Defendant with a motion for class certification.

7   ECF No. 16-5, Ex. 6. The motion for class certification included a spreadsheet that Defendant

8   produced on March 5, 2019 in response to written discovery. ECF No. 16-5 at 31 ¶ 5. The

9   spreadsheet identified thousands of putative class members and included the residences of some

10  putative class members. *Id.* at 387-513. Some putative class members were listed as residing

11  outside of California. *See, e.g., id.* at 418, 446, 456, 459.

12  On June 10, 2019, the state court granted Plaintiff's class certification motion in its

13  entirety. ECF No. 1 at 170. On June 12, 2019, more than five years after Plaintiff initiated this

14  action, Defendant removed to this Court. *Id.* at 1. Trial in the state court action was scheduled for

15  September 16, 2019. Mot at 8.

16  On July 12, 2019, Plaintiff moved to remand the case back to state court on the basis that

17  Defendant's notice of removal was untimely. ECF No. 16. Defendant filed an opposition on July

18  26, 2019, ECF No. 17 ("Opp."), and Plaintiff filed a reply on August 2, 2019, ECF No. 18

19  ("Reply").

20  **II.     LEGAL STANDARD**

21  **A. Motion to Remand**

22  "The right of removal is entirely a creature of statute, and a suit commenced in state court

23  must remain there until cause is shown for its transfer under some act of Congress." *Syngenta*

24  *Crop Prot.*, 537 U.S. 28, 32 (2002) (quotation marks omitted). In other words, "the removal

25  statute is strictly construed, and any doubt about the right of removal requires resolution in favor

26  of remand." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017)

27  (quotation marks and internal alterations omitted). Nonetheless, as the United States Supreme

28

3

Court explained, the rule is different in cases invoking CAFA jurisdiction, as "no antiremoval presumption attends cases invoking CAFA" because "CAFA's primary objective is to ensure Federal court consideration of interstate cases of national importance." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (internal alterations and quotation marks omitted). At the same time, even under CAFA, "the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006); *id*. ("We therefore hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

Defendant's contention that "Plaintiff bears the burden of proof in seeking remand to state court" is entirely meritless. *See* Opp. at 5. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007), which Defendant relies upon, pertains only to a plaintiff's burden of establishing an *exception* to CAFA jurisdiction once the defendant has already met its burden of demonstrating CAFA jurisdiction. *See Serrano*, 478 F.3d at 1024 ("[W]e conclude that although the removing party bears the initial burden of establishing federal jurisdiction . . ., once federal jurisdiction has been established . . ., the objecting party bears the burden of proof as to the applicability of any express statutory exception[.]").

### B. Request for Attorneys' Fees

Following remand of a case upon unsuccessful removal, the district court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The award of fees and costs is in the discretion of the district court. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Nonetheless, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The objective reasonableness of removal depends on the clarity of the applicable law and whether such law "clearly foreclosed the defendant's basis of removal." *Lussier*, 518 F.3d at

4

1066-67. "If the law in the Ninth Circuit is not so clear as to make the removing party's endeavor entirely frivolous, a court will deny the request for attorney's fees." *Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. 3d 1281, 1285 (N.D. Cal. 2019) (quoting *Dev. Bank v. Arthur*, 2012 WL 1438834, at *7 (N.D. Cal. Apr. 25, 2012)).

### III. DISCUSSION

Under the Class Action Fairness Act ("CAFA"), a thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, [but] the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)(3)). Plaintiff moves to remand on the grounds that Defendant's notice of removal was untimely because Defendant filed its notice of removal on June 12, 2019, more than 30 days after Plaintiff served Defendant with an "other paper" indicating that CAFA jurisdiction was proper. 28 U.S.C. § 1446(b)(3). For the reasons below, the Court GRANTS Plaintiff's motion to remand and DENIES Plaintiff's request for attorney's fees.

#### A. CAFA Jurisdiction

"Under CAFA, a federal court may exercise subject matter jurisdiction over a class action where (1) the parties are minimally diverse; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds $5 million." *Prado*, 373 F. Supp. 3d at 1285 (citing 28 U.S.C. § 1332(d)); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). In addition to these substantive requirements, removal pursuant to CAFA is subject to procedural requirements. *Rodriguez v. Swissport USA, Inc.*, 2015 WL 4977187, at *2 (C.D. Cal. Aug. 20, 2015) ("The removal statutes impose both procedural and jurisdictional requirements."). As relevant here, CAFA's procedural requirements relate to the timeliness of removal.

"The mechanics and requirements for removal are governed by 28 U.S.C. § 1446," *Kuxhausen*, 707 F.3d at 1139, and include two limitations on the time for removal, *see Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 123 (9th Cir. 2013) ("[T]he two periods specified in § 1446(b)(1) and (b)(3) operate as limitations on the right to removal."). First, pursuant to 28

U.S.C. § 1446(b)(1), a defendant must remove within thirty days of receiving an initial complaint if the complaint, on its face, alleges all of the substantive requirements necessary to establish federal subject matter jurisdiction. *Kuxhausen*, 707 F.3d at 1139 ("The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face."). However, "[i]f no ground for removal is evident in that pleading, the case is 'not removable' at that stage," and the thirty-day removal period does not begin to run. *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

Second, another separate "thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, [but] the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)(3)). "In other words, the 30-day period to file a notice of removal either begins when the plaintiff serves the defendant with the initial complaint, unless the complaint is indeterminate about removal, in which case the removal period begins when the defendant receives a paper that demonstrates the case is removable." *Prado*, 373 F. Supp. 3d at 1286; *see also Harris*, 425 F.3d at 692 ("The [removal] statute provides two thirty-day windows during which a case may be removed.").

"If either 30-day period expires, the time limitations in § 1446(b) are mandatory [such that] a timely objection to a late petition will defeat removal." *Kuxhausen*, 707 F.3d at 1141 n.3 (alteration in original); *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007) ("If a notice of removal is filed after this thirty-day window, it is untimely and remand to state court is therefore appropriate."). If, however, a plaintiff never serves a defendant with a pleading, amended pleading, motion, order, or other paper that allows a defendant to ascertain removability under CAFA, "neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered," and the "case may be removed at any time." *Roth*, 720 F.3d at 1126.

Indeed, the Ninth Circuit has noted that "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to

federal court when it discovers, based on its own investigation, that a case is removable." *Id.* at 1123. Put another way, "[i]f the initial pleading is not removable on its face and a defendant has not yet received a document from which removability can be ascertained, a defendant *may* remove at any point after it discovers, based on its own investigation, that a case is removable." *Rodriguez*, 2015 WL 4977187, at *2.

Therefore, it is "theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal." *Roth*, 720 F.3d at 1126. "[This] 'theoretical possibility of abusive gamesmanship' is a particular concern in CAFA cases, which 'may be removed at any time' rather than only within one year of the commencement of the action (the outer limit on removal in non-CAFA diversity cases)." *Rodriguez*, 2015 WL 4977187, at *2 (quoting *Roth*, 720 F.3d at 1126). To guard against this form of gamesmanship, the Ninth Circuit has noted that "plaintiffs are in a position to protect themselves," as plaintiffs "need only provide to the defendant a document from which removability may be ascertained." *Roth*, 720 F.3d at 1126.

In the present case, the only issue is whether Defendant's notice of removal was timely. Plaintiff contends that Defendant's notice of removal was untimely because all three elements necessary for CAFA jurisdiction were ascertainable more than thirty days before Defendant filed the notice of removal. Again, "[u]nder CAFA, a federal court may exercise subject matter jurisdiction over a class action where (1) the parties are minimally diverse; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds $5 million." *Prado*, 373 F. Supp. 3d at 1285 (citing 28 U.S.C. § 1332(d)).

Defendant concedes that it was on notice more than thirty days before removal that Plaintiff's proposed class had at least 100 members. Defendant, however, challenges Plaintiff's claim that the diversity and amount in controversy requirements were ascertainable from the pleadings or other papers more than thirty days before removal. Because Plaintiff claims that the amount in controversy was ascertainable at an earlier date than minimal diversity, the Court first addresses the amount in controversy and then turns to minimal diversity.

7
Case No. 19-CV-03336-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

### 1. Amount in Controversy

To support removal based on CAFA jurisdiction, Defendant has the burden of demonstrating that the amount in controversy exceeds five million dollars. *Prado*, 373 F. Supp. 3d at 1285 ("Under CAFA, a federal court may exercise subject matter jurisdiction over a class action where, [among other things], the amount in controversy exceeds $5 million." (citing 28 U.S.C. § 1332(d))); *Kuxhausen*, 707 F.3d at 1140. The parties do not dispute that the amount in controversy here exceeds five million dollars. The parties do dispute, however, when Defendant first received an amended pleading, motion, order, or other paper from which Defendant could determine that the amount in controversy satisfied CAFA's jurisdictional requirement, and therefore, whether Defendant's removal was timely.

Although Plaintiff baldly asserts, in a single sentence, that the pleadings put Defendant on notice that CAFA's amount in controversy requirement was satisfied, Plaintiff never provides any supporting facts or argument. Mot. at 17. "[A] bare assertion of an issue does not preserve a claim." *Indep. Towers of Washington v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (internal quotation marks and alterations omitted). Thus, Plaintiff effectively concedes that the pleadings did not facially allege over five million dollars in damages.

Instead, Plaintiff argues that a settlement conference statement served on Defendant on July 29, 2015 demanded $11.5 million and put Defendant on notice that CAFA's amount in controversy was satisfied. Mot. at 11; Reply at 12-13. Thus, Plaintiff contends that the amount in controversy was ascertainable from an "other paper" served on Defendant more than thirty days prior to June 12, 2019, when Defendant filed its notice of removal. Mot. at 14-15; *see* 28 U.S.C. § 1446(b)(3).

"A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Aparicio v. Abercrombie & Fitch Stores Inc.*, 2014 WL 545795, at *3 (C.D. Cal. Feb. 10, 2014) ("A document reflecting a settlement demand in excess of the jurisdictional minimum constitutes "other paper" sufficient to provide notice that a case is removable;

8
Case No. 19-CV-03336-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

consequently, it triggers the thirty day window under § 1446(b)."). Defendant acknowledges as much but responds that the demand was "boldly optimistic" and "unreasonable." Opp. at 10; *see id.* ("Although Defendant agrees that documents like a settlement demand can be relevant evidence of the amount in controversy, any such demand must be reasonable.").

However, the Ninth Circuit has held that in determining whether the elements of CAFA jurisdiction are ascertainable from a pleading or "other paper," a defendant's subjective knowledge is not relevant. *Harris*, 425 F.3d at 694 ("[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."); *Roth*, 720 F.3d at 1126 ("[A] defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit . . . begins to run against the defendant." (quotation marks omitted)); *Kuxhausen* 707 F.3d at 1141 (noting the necessity of a "clear rule" in determining when removal is ascertainable and noting that the Ninth Circuit was "unwilling to embroil the courts in inquir[ies] into the subjective knowledge of a defendant" (quotation marks and internal alterations omitted)). Rather, the inquiry depends on whether the "other paper"—here Plaintiff's settlement conference statement—"was sufficiently supported by details of the injuries claimed and clearly indicated that the amount in controversy exceeded the jurisdictional amount." *Babasa*, 498 F.3d at 975.

Such damages calculations, "even if imprecise," can put a defendant on notice for the amount in controversy so long as the amount in controversy is explained and reasonably calculated. *Id.* Courts have only found that a settlement letter does not reflect a reasonable estimate of damages when the settlement letter did not include any explanation or reasoning regarding the total damages figure. *See Aparicio*, 2014 WL 545795, *6 (holding that the settlement letter did not reflect a reasonable estimate of class damages because the demand "d[id] not explain how she arrived at a damages estimate of more than $16 million"); *Romsa v. Ikea U.S. W., Inc.*, 2014 WL 4273265, at *2 (C.D. Cal. Aug. 28, 2014) ("The statement of damages does not explain how [plaintiff] arrived at these estimates."); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d

9

Case No. 19-CV-03336-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

1055, 1070 (C.D. Cal. 2014) ("[T]he risk assessment provided by . . . counsel is entirely conclusory. Despite the fact that it purportedly details the claims of more than 1,000 class members, it is only one page long, and contains no underlying factual data to support its calculations."). *Owens v. Westwood College Inc.,* 2013 WL 4083624, *3 (C.D. Cal. Aug. 12, 2013) ("Here, the May 15 letter does not offer any explanation for how plaintiff calculated the $1.5 million demand.").

Here, the Court concludes that Plaintiff's settlement conference statement included sufficient explanation justifying the ultimate $11.5 million figure. As Plaintiff notes, the July 29, 2015 settlement conference statement not only put Defendant on notice of the amount in controversy, it "went a step further" and "broke down damages alleged." Mot. at 17. The settlement conference statement itemized claimed penalties and wages for total claimed damages as follows:

| **TOTAL CLAIMED DAMAGES** | | $ 56,525.40 |
|---|---|---|
| 1. Total Claimed Penalties | | $ 26,242.32 |
|     a. 203 Penalties | $ 2,492.32 | |
|     b. 226(e) Penalties | $ 3,500.00 | |
|     c. 558 Penalties | $ 3,450.00 | |
|     d. 1197 Penalties | $ 8,600.00 | |
|     e. 2699 Penalties | $ 8,200.00 | |
| 2. Total Claimed Wages | | $ 27,530.08 |
|     a. meal period compensation | $ 6,695.38 | |
|     b. rest period compensation | $ 10,345.57 | |
|     c. unpaid minimum wages | $ 2,889.27 | |
|     d. unpaid overtime wages | $ 597.16 | |
|     e. underpaid minimum wages | $ 5,518.08 | |
|     f. underpaid overtime wages | $ 644.37 | |
|     g. indemnification | $ 840.25 | |
| 3. Interest | | $ 2,753.00 |

The settlement conference statement also contains further details. On the fourth page, the settlement conference statement notes that RAMCO employed 1,200 covered employees and estimates 3,700 "total . . . employees, former and current, including the putative class in this case." The settlement conference statement then calculates that "the total number of employee workweeks involved in this case" is 192 weeks, "[a]ssuming that 1,200 employees worked 35 weeks per season." *Id.* at 4. Multiplying the $56,525.40 figure by Plaintiff's 192 figure for "the total number of employee workweeks involved in this case" yields $10,852,876.80.

To be sure, Plaintiff's settlement conference statement includes ambiguities, such as why Plaintiff's calculations are based on the 1,200 covered employees instead of the 3,700 putative class members. Nonetheless, the Ninth Circuit has held that "a defendant [must] apply a reasonable amount of intelligence in ascertaining removability," and that "[m]ultiplying figures . . . is an aspect of" "apply[ing] a reasonable amount of intelligence in ascertaining removability." *Kuxhausen*, 707 F.3d at 1140. Furthermore, the Ninth Circuit has held that total precision in a plaintiff's mathematical calculations is not required. *See Babasa*, 498 F.3d at 975 (holding that a settlement letter's calculations, "even if imprecise," could put a defendant on notice for the amount in controversy so long as the letter "was sufficiently supported by details of the injuries claimed").

Plaintiff provides sufficient detail and explanation to justify its ultimate $11.5 million demand. Therefore, this case is distinguishable from others where courts have found settlement letters unreasonable because the settlement letters did not include any justification for their ultimate monetary demands. *See Aparicio*, 2014 WL 545795, *6 (holding that the settlement letter did not reflect a reasonable estimate of class damages because the demand "d[id] not explain how she arrived at a damages estimate of more than $16 million"); *Romsa v. Ikea U.S. W., Inc.*, 2014 WL 4273265, at *2 (C.D. Cal. Aug. 28, 2014) ("The statement of damages does not explain how [plaintiff] arrived at these estimates."); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1070 (C.D. Cal. 2014) ("[T]he risk assessment provided by . . . counsel is entirely conclusory. Despite the fact that it purportedly details the claims of more than 1,000 class members, it is only one page

11

long, and contains no underlying factual data to support its calculations."). *Owens v. Westwood College Inc.,* 2013 WL 4083624, *3 (C.D. Cal. Aug. 12, 2013) ("Here, the May 15 letter does not offer any explanation for how plaintiff calculated the $1.5 million demand.").

Accordingly, the amount in controversy in this case was ascertainable from Plaintiff's July 29, 2015 settlement conference statement, almost four years before Defendant removed this case to federal court on June 12, 2019. As a result, whether Defendant's removal was timely depends on whether and when Plaintiff put Defendant on notice that the final element of CAFA jurisdiction—minimal diversity—was satisfied. The Court now turns to the minimal diversity issue.

### 2. Minimal Diversity

As to CAFA's diversity requirement, federal jurisdiction is proper when there is minimal diversity between the parties—namely, where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.,* 844 F.3d 1133, 1137 (9th Cir. 2017) ("[CAFA] supports jurisdiction when there is minimal diversity (i.e., one plaintiff is a citizen of a different state than one defendant)."). Plaintiff acknowledges that the citizenship of class members was not evident on the face of the complaint or amended complaints, but argues that minimal diversity was ascertainable from an "other paper" more than thirty days prior to Defendant filing its notice of removal. Mot. at 14-15; *see* 28 U.S.C. § 1446(b)(3). Specifically, Plaintiff contends that Plaintiff served Defendant a spreadsheet identifying that multiple class members resided out of state on May 7, 2019—more than thirty days before Defendant removed on June 12, 2019. Plaintiff served Defendant with this spreadsheet as an attachment to Plaintiff's motion for class certification. Mot. at 14-15; Reply at 4-9.

Plaintiff notes that Defendant produced this spreadsheet to Plaintiff in March 2019. Mot. at 7. In its motion to remand, Plaintiff argues that Defendant possessed this spreadsheet and was therefore on notice of minimal diversity for a prolonged period. *See* Mot. at 14-15. In its Reply, Plaintiff abandons this argument, Reply at 4-9, and for good reason. "A defendant's subjective

12

knowledge [of removability] cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant." *Roth*, 720 F.3d at 1126 (quotation marks omitted); *see also Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 187 (4th Cir. 2017) ("Despite our broad interpretation of the 'motion, order or other paper' requirement, the statutory language plainly does not encompass a document produced by [a party] that is never 'received' by that party."); *Rico-Chinn v. Prudential Ins. Co. of Am.*, 2005 WL 1632289, at *3 (N.D. Cal. July 12, 2005) ("Plaintiff's theory that defendant 'received' its own records, i.e., documents created and maintained by defendant, appears inconsistent with the plain language of the statute.").

Instead, a defendant must "receive" an "other paper" from a plaintiff in order for the thirty-day removal period to begin. 28 U.S.C. § 1446(b)(3). This is precisely the reason why the Ninth Circuit found it "theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal." *Roth*, 720 F.3d at 1126. In such a situation, however, "plaintiffs are in a position to protect themselves" as "they need only provide to the defendant a document from which removability may be ascertained." *Id.*

A plaintiff's motion for class certification and accompanying documents constitutes a "motion . . . or other paper" from which removability may be ascertained. 28 U.S.C. § 1446(b)(3); *Castro v. ABM Indus., Inc.,* 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19, 2017) ("Plaintiffs' class certification motion, trial plan, and expert declaration thus constitute a 'motion . . . or other paper from which it may be first ascertained that the case . . . has become removable." (quoting 28 U.S.C. § 1446(b)(3))); *Williams v. Ruan Transp. Corp.*, 2013 WL 5492205, at *7 (E.D. Cal. Oct. 2, 2013), *report and recommendation adopted*, 2013 WL 5708454 (E.D. Cal. Oct. 18, 2013) ("Plaintiffs' motion for class certification which is an 'other paper' under section 1446.").

Defendant concedes that the spreadsheet attached to Plaintiff's motion for class certification identifies multiple employees who reside outside California, but asserts that "actual citizenship, not residency, determines diversity." Opp. at 6. Therefore, Defendant claims that

13

minimal diversity was not ascertainable from the spreadsheet attached to the motion for class certification and that service of the May 7, 2019 spreadsheet did not trigger the thirty-day removal period such that removal was timely.

Generally speaking, a "natural person's state citizenship is . . . determined by her state of domicile, not her state of residence." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* (citations omitted).

In *Harris v. Bankers Life & Casualty Co.*, the Ninth Circuit adopted a "bright-line approach" requiring the ground for removal to be "revealed affirmatively" in order for the thirty-day clock to start. *See* 425 F.3d at 695, 697. Additionally, the Ninth Circuit has noted that "defendants need not make extrapolations or engage in guesswork." *Kuxhausen*, 707 F.3d at 1140. On this basis, some district courts have interpreted *Harris* as holding that "the thirty-day clock does not start if there is *any* indeterminacy in the complaint as to whether a case is removable." *Kim v. MAPFRE Ins. Co.*, 2019 WL 3942962, at *3 (C.D. Cal. Aug. 21, 2019).

This Court does not read *Harris* so broadly. In *Harris*, "the initial pleading only stated [defendant]'s 1972 residency," even though the complaint was filed more than three decades later in January 2003. 425 F.3d at 691, 695. As courts in this district have noted, *Harris* is distinguishable because the complaint in that case only listed the defendant's *former residence*, and had no facts regarding residency or citizenship at the time the complaint was filed more than three decades later. *Ervin v. Ballard Marine Constr., Inc.*, 2016 WL 4239710, at *3 (N.D. Cal. Aug. 11, 2016).

*Harris*, however, is not the only relevant Ninth Circuit case. In *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880 (9th Cir. 2013), the Ninth Circuit noted that "numerous courts treat a person's residence as prima facie evidence of the person's domicile." *Id.* at 886 (citing *Anderson v. Watts*, 138 U.S. 694, 706 (1891), and *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)). Despite citing the United States Supreme Court's decision in *Anderson*, the

14

Ninth Circuit "decline[d] to reach that issue" in *Mondragon.* 736 F.3d at 886.

Three years later, in 2016, the Ninth Circuit appeared to conclusively hold that a person's residence is prima facie evidence of domicile. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016). The Ninth Circuit noted that "[i]t is a longstanding principle that '[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary.'" *Id.* (quoting *Anderson*, 138 U.S. at 706, and citing *Hollinger*, 654 F.3d at 571)).

In 2019, however, the Ninth Circuit suggested that the issue was still open in the circuit. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) ("Although the district court focused much of its analysis on the question of whether allegations of a party's residency constitutes prima facie evidence of that party's domicile, we need not address that issue today." (citing *Mondragon*, 736 F.3d at 886)). It is thus unclear whether the Ninth Circuit itself has held that a person's residence is prima facie evidence of domicile and citizenship.

As a result of the lack of clear guidance from the Ninth Circuit, district courts are split on this issue. *Compare, e.g., Kim v. MAPFRE Ins. Co.*, 2019 WL 3942962, at *3 (C.D. Cal. Aug. 21, 2019) ("[O]nly allegations of information sufficient to establish *citizenship* could start the [thirty-day] clock."), *with Jimenez v. Charter Commc'ns Inc.*, 2018 WL 5118492, at *3 (C.D. Cal. Oct. 19, 2018) ("The Court adopts [the position that a person's residence is prima facie evidence of the person's domicile] where, as here, Plaintiff has admitted she is a California resident and is bringing claims on behalf of a putative class of California consumers."); *Ervin v. Ballard Marine Constr., Inc.*, 2016 WL 4239710, at *3-4 (N.D. Cal. Aug. 11, 2016) ("Here, the Complaint put Ballard on notice that Ervin was a resident of Oregon and, therefore, diverse from Ballard. Therefore, the 30-day limit was triggered . . . ." (collecting cases)); and *Rodriguez v. Swissport USA, Inc.*, 2015 WL 4977187, at *3 (C.D. Cal. Aug. 20, 2015) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile." (quotation marks omitted)).

Nonetheless, numerous courts outside the Ninth Circuit, including the United States Supreme Court and other circuit courts, have concluded that a person's residence is prima facie

15

evidence of domicile and citizenship. In *Anderson v. Watts*, 138 U.S. 694, 706 (1891), the United States Supreme Court held that "[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary." Although the Ninth Circuit's decisions in *Mondragon* and *NewGen* cite *Anderson*, the Ninth Circuit's 2019 decision in *Ehrman* does not. It is unclear why the United States Supreme Court decision's in *Anderson* is not binding.

The Ninth Circuit's *Mondragon* and *NewGen* decisions also cite the Fifth Circuit's decision in *Hollinger*, which held that "[e]vidence of a person's place of residence, however, is prima facie proof of his domicile." *Hollinger*, 654 F.3d at 571. The Tenth Circuit has also held that "[r]esidence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (citations omitted). Indeed, a leading treatise explains that "[i]t is assumed . . . that a person's current residence is also his domicile." 13E Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3612 (3d ed. 2013); *see id.* n.28 (collecting cases).

The Court agrees with these courts and holds that a person's residence is prima facie evidence of domicile and citizenship. In *Kuxhausen*, the Ninth Circuit acknowledged that plaintiffs "need not make extrapolations or engage in guesswork." 707 F.3d at 1140. Nonetheless, the Ninth Circuit also "require[d] a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Id.*

*Kuxhausen's* holding militates in favor of holding that residence is prima facie evidence of domicile and citizenship. In the instant case, regarding the class plaintiffs identified in the spreadsheet attached to the motion for class certification, Defendant did not proffer evidence or contest that these class plaintiffs were citizens of other states. If a party currently resides in a particular state, it is not "mere speculation and conjecture" or an "unreasonable assumption[]" that said party is also domiciled in that state. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (holding that removal jurisdiction cannot be supported "by mere speculation and conjecture, with unreasonable assumptions"). Indeed, as noted previously, numerous courts across the country have held that place of residence is prima facie evidence of domicile and

16

1 citizenship. Therefore, "apply[ing] a reasonable amount of intelligence" suggests that a party's current place of residence is also that party's domicile. *See Kuxhausen*, 707 F.3d at 1140.

Accordingly, Defendant had a sufficient basis to ascertain minimal diversity on May 7, 2019, when Plaintiff served Defendant with a spreadsheet indicating that multiple class plaintiffs currently resided outside of California. Defendant did not remove the case until June 12, 2019, more than thirty days after ascertaining that all elements of CAFA jurisdiction were satisfied and that federal jurisdiction was proper. As a result, Defendant's removal was untimely under 28 U.S.C. § 1446(b)(3), and the Court GRANTS Plaintiff's motion to remand.

### B. Attorney's Fees

Along with the motion to remand, Plaintiff requests an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141. Defendant's removal was not objectively unreasonable. Importantly, Plaintiff does not dispute that this Court has CAFA jurisdiction. Defendant's only failure is that its removal was untimely. Therefore, it was not objectively unreasonable for Defendant to remove. *See Maniar v. F.D.I.C.*, 979 F.2d 782, 784 (9th Cir. 1992) ("[U]ntimely removal is a procedural defect and not jurisdictional"); *Prado*, 373 F. Supp. 3d at 1288 (denying attorney's fees to a plaintiff when defendant's removal was simply untimely).

Accordingly, the Court in its discretion DENIES Plaintiff's request for attorney's fees. *See, e.g.*, *Prado*, 373 F. Supp. 3d at 1288; *Blaker v. Credit One Bank, N.A.*, 2018 WL 5307470, at *4 (S.D. Cal. Oct. 26, 2018) (denying request for fees when the court's jurisdiction was "undisputed" and the "case could have remained" in the federal court had the removal been timely).

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand the instant case to the Superior Court of California for the County of Monterey. The Court also DENIES

17
Case No. 19-CV-03336-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

Plaintiff's request for attorney's fees.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 13, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge